UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STEPHANIE JOHN,

**DECISION AND ORDER**

Plaintiff,

1:17-CV-00963 (JJM)

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,[1]

Defendant.

---

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Supplemental Security Income ("SSI") or Disability Insurance Benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [12, 17].[2] The parties have consented to my jurisdiction [15]. Having reviewed the parties' submissions [12, 17, 18], the action is remanded for further proceedings.

**BACKGROUND**

In January 2014, plaintiff, who was 38 years old, filed applications for DIB and SSI, alleging a disability onset date of January 1, 2011 due to fibromyalgia and rheumatoid

---

[1]      Nancy A. Berryhill is currently the Acting Commissioner of Social Security. She is therefore substituted for the "Commissioner of Social Security" as the defendant in this suit. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

[2]      Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

arthritis. Administrative record [7], pp. 153-64, 182.  After plaintiff's claims were initially denied (id., pp. 86-96), an administrative hearing was held on June 6, 2016 before Administrative Law Judge ("ALJ") David Neumann, at which plaintiff, who was represented by a paralegal, and a vocational expert testified.  Id., pp. 31-68.

The parties' familiarity with plaintiff's treatment history, which is fully set forth in their submissions (plaintiff's Memorandum of Law [12-1], pp. 6-11; Acting Commissioner's Brief [17-1], pp. 3-14), is presumed.  The opinion evidence of plaintiff's physical impairments included a January 28, 2014 assessment prepared by Entela Pone, M.D., plaintiff's treating rheumatologist, who determined that she was "very limited" in her ability to walk, stand, lift carry, push/pull, use her hands, and climb stairs. Id., p. 298.  Dr. Pone opined that these limitations were expected to last between four to six months.  Id

A consultative internal medicine examination was performed several weeks later by Hongbia Liu, M.D., who diagnosed plaintiff with arthritis, fibromyalgia, asthma, and obesity. Dr. Liu determined that plaintiff's hand and finger dexterity were intact and that her grip strength was 5/5 bilaterally.  Id., p. 295.  Overall, Dr. Liu opined that plaintiff had a "mild to moderate limitation for prolonged walking, bending, kneeling, and overhead reaching." Id.

On April 18, 2016 Sunita Chadha, M.D. of the WNY Rheumatology Center, who had been treating plaintiff since approximately June 2015, completed an assessment in which she checked boxes indicating that plaintiff was unable to ambulate or to perform fine and gross movements effectively. Id., p. 588. However, later in the assessment she declined to quantify plaintiff's limitations, stating that she was "unable to assess. Please send patient for disability exam". Id., p. 589.

In his June 28, 2016 decision, ALJ Neumann determined that plaintiff's severe impairments were rheumatoid arthritis, asthma, obesity, lumbar dextroscoliosis, and mild carpal tunnel syndrome. Id., p. 18. He assessed plaintiff with the residual functional capacity ("RFC") to perform sedentary work "except she can sit for six of eight hours total and stand/walk for two of eight hours total with normal breaks but would require a sit/stand option while remaining at the workstation allowing her to sit/stand once every 30 minutes while performing assigned duties; can lift, carry, push, and pull up to 10 pounds occasionally and five pounds frequently but with no work above shoulder level with the upper extremities; should avoid concentrated pollutants, temperature extremes, and vibrations; should avoid crouching, crawling, and climbing ropes, ladders, and scaffolds; and can occasionally balance, stoop, kneel, and climb ramps and stairs". Id., pp. 19-20.

Based on that RFC and other factors, ALJ Neumann decided that while plaintiff was unable to perform her past relevant work, there were sufficient jobs in the national economy that she was capable of performing, and therefore was not disabled from January 1, 2011, through the date of his decision. Id., pp. 10-19.[3] Following that decision, plaintiff submitted additional materials to the Appeals Council, which included a July 1, 2016 assessment prepared by Amy Ireland, N.P., who found that plaintiff's rheumatoid arthritis and fibromyalgia resulted in her being "very limited" in her ability to walk, stand, sit, lift, push/pull, see, hear, speak, use hands, and climb stairs. Id., pp. 590-91. Nurse Ireland opined that plaintiff was "unable to work [due to] severe joint pain/swelling", and that these limitations were permanent. Id., p. 591.

---

[3] Plaintiff's disability onset date had been amended on June 6, 2016 to January 1, 2013. [7], p. 176.

ALJ Neumann's decision became the final decision of the Acting Commissioner on August 2, 2017 when the Appeals Council found no basis to change the decision. <u>Id</u>., pp. 1-6. Thereafter, this action ensued.

## DISCUSSION

**A.    Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". <u>Consolidated Edison Co. of New York. Inc. v. NLRB</u>, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. <u>Shaw</u>, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Neumann erred in evaluating her fibromyalgia (plaintiff's Memorandum of Law [12-1], Point I) and the opinions of Drs. Pone and Chadha concerning her hand limitations. <u>Id.</u>, Point II(A) and (B). She further argues that the Appeals Council improperly rejected Nurse Ireland's July 1, 2016 assessment. <u>Id.</u>, Point II(C). Plaintiff contends that the errors concerning the treatment of the medical opinion evidence were decidedly harmful because "unskilled sedentary work requires 'good use of the hands and fingers for repetitive hand-finger actions'" <u>Id.</u>, Point D (*quoting* Social Security Ruling ("SSR") 96-9p,

1996 WL 374185) and points to the vocational expert's testimony that there would be no jobs in the national economy for an individual unable to hand and finger for more than two hours a day. Id. (*citing* [7], p. 66).

**B.     ALJ Neumann's Treatment of Plaintiff's Fibromyalgia.**

Plaintiff argues that ALJ Neumann's determination that her fibromyalgia was not a medically determinable impairment ignored the record evidence and failed to evaluate the evidence in light of that impairment. Plaintiff's Memorandum of Law [12-1], Point I.  I agree.

SSR 12-2p discusses what a claimant must show to establish her fibromyalgia constitutes a "severe" impairment at step two. 2012 WL 3104869, at *2-3.  SSR 12-2p requires evidence of a several items, including at least 11 positive tender points, bilaterally and both above and below the waist to establish fibromyalgia. Id., *3.  In concluding that fibromyalgia was not a medically determinable impairment, ALJ Neumann explained that "the record lacks evidence of requisite tender points pursuant to SSR 12-2p and diagnoses were based on her own subjective reports without correlating laboratory diagnostic results". [7], p. 19.

"A 'mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability,' but denying a fibromyalgia-claimant's claim of disability based in part on a perceived lack of objective evidence is reversible error." Campbell v. Colvin, 2015 WL 73763, *6 (N.D.N.Y. 2015).  As plaintiff argues, ALJ Neumann "committed this *exact* error". Plaintiff's Memorandum of Law [12-1], p. 12 (emphasis in original).  ALJ Neumann's belief that the objective evidence conclusively established that plaintiff did not meet the requisite number of trigger points is unfounded.  For example, Dr. Liu diagnosed plaintiff with fibromyalgia and found her to have "*at least* ten trigger points" in her

legs and back. [7], p. 294 (emphasis added).  Dr. Pone likewise diagnosed plaintiff with

fibromyalgia and stated that she had tender points "all over".  Id., p. 271.  Under these

circumstances ALJ Neumann had an obligation to contact Drs. Liu and Pone before concluding

that there was a lack of objective support for their diagnoses of fibromyalgia.  *See* Szefler v.

Berryhill, 2018 WL 6831156, *6 (W.D.N.Y. 2018) ("[b]ecause neither Dr. Fabian nor Dr.

Schwab followed the [1999 or 2010 American College of Rheumatology] criteria, the

Commissioner contends, their diagnoses do not suffice to establish fibromyalgia as a medically

determinable impairment.  But this argument fails because the ALJ did not recontact Szefler's

long-time treating physician - Dr. Fabian - about what the ALJ believed to be inadequacies in Dr.

Fabian's medical opinions"); Dillon v. Astrue, 2010 WL 2850910, *6 (C.D. Cal. 2010) ("in

noting that plaintiff had 'multiple' trigger points, they may have in fact found more than eleven

trigger points. It was the ALJ's duty to further develop the record if she felt that a specific finding

of the number of trigger points was necessary. . . . Since the ALJ failed to explain how the

physicians' failure to explicitly state the number of plaintiff's trigger points reflected that plaintiff

had less than eleven such points, the Court finds that rejecting plaintiff's physicians' diagnoses of

fibromyalgia on that basis, without more, constitutes error"); Neisinger v. Colvin, 2016 WL

2866260, *4 (W.D. Wash. 2016) ("even if the ALJ rejected Dr. Dunbar's diagnosis of

fibromyalgia because her records did not note the exact number of trigger points she found, this

was error").

The Acting Commissioner argues that "any error concerning the ALJ's

determination that plaintiff's fibromyalgia was not a medically determinable impairment was

harmless because there is no indication in the record that plaintiff's rheumatoid arthritis and

fibromyalgia "caused distinct symptoms".  Acting Commissioner's Response [17-1], p. 20.

Although not cited by the Acting Commissioner, there is at least some support for that argument. *See, e.g.*, Reyes v. Colvin, 2014 WL 4057181, *2 (W.D. Wash. 2014) (plaintiff "has not shown that including fibromyalgia at step two would have suggested any limitations not already accounted for by the ALJ's inclusion of inflammatory arthritis as a severe impairment. Thus, any error would be harmless"); Larlee v. Social Security Administration Commissioner, 2015 WL 3400664, *8 (D. Me. 2015) ("the plaintiff's symptoms and limitations presumably would have been the same as from rheumatoid arthritis and, accordingly, already were taken into consideration. Any error in failing to consider whether the plaintiff had a severe impairment of fibromyalgia, hence, was harmless").

In arguing that the error was not harmless, plaintiff contends that the failure to properly evaluate her fibromyalgia permeated ALJ Neumann's analysis at the remaining steps. Specifically, she argues that ALJ Neumann used the absence of any objective findings to discount plaintiff's credibility and subjective complaints, and that "this perceived lack of objective findings would be of little relevance if the ALJ had properly evaluated [her] fibromyalgia". Acting Commissioner's Memorandum of Law [12-1], p. 13-14.

Although this is a close question, I cannot conclude that the result would have been the same had ALJ Neumann properly considered whether plaintiff's fibromyalgia was a medically determinable impairment. *See* Campbell, 2015 WL 73763 at *12 (in concluding that a similar error was not harmless, the court explained that the plaintiff was "deprived . . . of a substantial right to have her claim adjudicated according to correct principles of law. Nor can a reviewing court conclude that the result would have been the same absent these errors. Had ALJ Koennecke not discounted Dr. Fiacco's physical residual functional capacity assessment and Campbell's subjective testimony for lack of corroborating objective evidence, a finding of

'disabled' might have been compelled under the evidence"). Szefler, 2018 WL 6831156 at *5 ("[a]lthough, the failure to find an impairment to be severe at step two may be harmless error when ALJ later considers the impairment in the evaluation . . . here the ALJ did not address or analyze Szefler's fibromyalgia condition as part of his evaluation, including when he determined that Szefler had the RFC to perform light work at step four. . . . And that was an error requiring remand").

"Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have *normal physical examinations*, *e.g.*, full range of motion, no joint swelling, normal muscle strength and *normal neurological reactions.* Campbell, 2015 WL 73763, *5 (emphasis in original). Thus, it is possible that at least some of ALJ Neumann's findings, which were based on the absence of supporting objective medical evidence, may be different if fibromyalgia is determined to be a medically determinable impairment. Therefore, this case is remanded for the ALJ to properly address plaintiff's fibromyalgia, develop the record as needed, and reweigh the evidence in light of that analysis, including the opinions of Drs. Pone and Chadha. *See* Szefler, 2018 WL 6831156 at *7.[4]

---

[4] Based on this conclusion, it is unnecessary for me to address plaintiff's arguments directed at whether ALJ Neumann properly weighed the opinions of Drs. Pone and Chadha. *See* Plaintiff's Memorandum of Law [12-1], pp. 15-20. However, I do note that upon remand the ALJ should consider re-contacting Dr. Chada to resolve the discrepancy in her April 18, 2016 assessment concerning plaintiff's hand limitation. [7], pp. 588-89. Whereas she checked the box stating that plaintiff had an "[i]nability to perform fine and gross movements effectively" (id., p. 588), she also stated that she was unable to assess plaintiff's ability to use her hands for gross manipulation. Id., p. 589. *See* Hanel v. Berryhill, 2018 WL 4573264, *4 (W.D.N.Y. 2018) ("[a]lthough the ALJ is not required to re-contact a treating physician simply because medical evidence is internally inconsistent . . . like when there are minor or irrelevant inconsistencies, he is required to do so where a conflict or ambiguity must be resolved to make the disability determination").

**C.     The Appeals Council's Treatment of Nurse Ireland's July 1, 2016 Assessment.**

"The Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision. . . . The Appeals Council must 'evaluate the entire record including the new and material evidence submitted . . . [and] review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Gibson v. Commissioner of Social Security,  2018 WL 2085635, *6 (N.D.N.Y. 2018) (*quoting* 20 C.F.R. § 404.970(b)). [5] "If the Appeals Council fails to fulfill its obligations under [the regulation], the proper course for the reviewing court is to remand for reconsideration in light of the new evidence." Hollinsworth v. Colvin, 2016 WL 5844298, *3 (W.D.N.Y. 2016). "[M]edical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." Newbury v. Astrue, 321 Fed. Appx. 16, *2, n.2 (2d Cir. 2009) (Summary Order). "Additional evidence may relate to the relevant time period even if it concerns events after the ALJ's decision, provided the evidence pertains to the same condition previously complained of by the plaintiff." Plante v. Berryhill, 2017 WL 6452391, *1 (W.D.N.Y. 2017).

Here, the Appeals Council summarily declined to review Nurse Ireland's assessment, explaining only that it "does not relate to the period at issue". [7], p. 2. There may be

---

[5]     "[E]ffective January 17, 2017, the language of 20 C.F.R. § 404.970(b) was amended. It now provide[s] that new evidence will only be considered by the Appeals Council if 'good cause' is shown for not submitting the evidence to the ALJ, with 'good cause' falling into several narrowly defined categories. Although the Appeals Council denied Plaintiff's appeal [after the amendment of the regulation, his] appeal was filed prior to the effective date of the amended regulation." Amy T. v. Commissioner of Social Security, 2018 WL 5297808, *11 n. 2 (N.D.N.Y. 2018).  Therefore, I will apply the regulation in effect at the time plaintiff filed his appeal. Id.

reasons why Nurse Ireland's assessment is not new and material.[6]  However, the Appeals

Council's conclusory treatment of Nurse Ireland's assessment, which post-dated the relevant

period by mere days and was at least the second medical opinion assessing plaintiff with hand

limitations, was insufficient. *See* <u>Plante</u>, 2017 WL 6452391, *2 ("the AC appears to have

summarily rejected Dr. Koretz's opinions simply because they were 'about a later time' without

analyzing whether the substance of the opinions was related to plaintiff's pre-hearing medical

deficits. . . .  The Court cannot determine whether these opinions . . .  represent a clarification of

plaintiff's condition during the relevant time period. This was not harmless error"); <u>Webster v.

Colvin</u>, 215 F. Supp. 3d 237, 243 (W.D.N.Y. 2016) ("[t]he Appeals Council's cursory, formulaic

rejection of the evidence simply because it was generated after the ALJ's decision, without any

legal or factual reasoning, is insufficient"); <u>Gurnett v. Berryhill</u>, 2018 WL 3853387, *4

(W.D.N.Y. 2018) (same); <u>Lofton v. Berryhill</u>, 2019 WL 1244055, *3 (W.D.N.Y. 2019) (same).

Therefore, this action is also remanded for reconsideration in light of Nurse Ireland's July 1,

2016 assessment.

---

[6]      For example, the Acting Commissioner argues that Nurse Ireland only treated plaintiff once.
Acting Commissioner's Brief [17-1], p. 28.  However, that argument is a *post hoc* rationalization for why
the Appeals Council did not consider the assessment (*see* <u>Hollinsworth</u>, 2016 WL 5844298 at *4),
appears to be belied by Nurse Ireland's assessment, which stated that plaintiff had been a patient of hers
for "life" ([11], p. 591), and did not alter the Appeal Council's obligations. *See* <u>Hollinsworth</u>, 2016 WL
5844298 at *4 ("the fact that Dr. Ilozue was not a 'treating physician' does not mean that the Appeals
Council was entitled to ignore her report entirely. . . . [T]he Appeals Council has a duty under section
416.1470(b) to consider additional evidence that is new, material, and relates to the time on or before the
ALJ's decision. Thus, although the Appeals Council was not required to treat Dr. Ilozue's report as a
treating source opinion and give 'good reasons' for rejecting it, the Appeals Council was still obligated to
at least consider the report rather than summarily rejecting it without any consideration at all").

.

**CONCLUSION**

For these reasons, plaintiff's motion for judgment on the pleadings [12] is granted to the extent that this case is remanded to the Acting Commissioner for further proceedings consistent with this Decision and Order, but is otherwise denied, and the Acting Commissioner's motion [17] is denied.

**SO ORDERED**.

Dated: May 31, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge